SHIRLEY BARNES,                          )
                                         )
          Plaintiff,                     )
                                         )
     vs.                                 )          Case No. 1:07CV150 LMB
                                         )
BLACK RIVER ELECTRIC                     )
COOPERATIVE, et al.,                     )
                                         )
          Defendants.                    )

## MEMORANDUM AND ORDER

This matter is before the court upon plaintiff's Complaint alleging wrongful termination,

age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 621 et seq., and 29 U.S.C. § 626(b), and willful violation of the ADEA. This case has

been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice

Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c).

Presently pending before the court is defendants' Motion for Summary Judgment.

(Document Number 18). Plaintiff has filed a Memorandum in Opposition to Defendants' Motion

for Summary Judgment. (Doc. No. 21). Defendants have filed a Reply Memorandum in Support

of Their Motion for Summary Judgment. (Doc. No. 22).

## Factual Background[1]

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. Plaintiff was employed by Defendant Black River Electric Cooperative (BREC) from June 1, 2002 through January 30, 2007. BREC is an electric cooperative that furnishes electricity to its members or customers. Defendant Tom Steska was Chief Executive Officer of BREC. Defendant Keith Myers was plaintiff's supervisor at BREC.

Plaintiff was employed by BREC as a night clerk/dispatcher, which was a union job. Plaintiff was interviewed for the position by Mr. Myers. The position of night clerk/dispatcher differed from the position of clerk/dispatcher. A night dispatcher would be responsible for covering weekends or Sundays, and a clerk dispatcher would not, and a night dispatcher receives a pay differential for this responsibility.[2] Plaintiff, as a night clerk/dispatcher, received an additional wage over a clerk/dispatcher. Plaintiff understood when she took the job as night clerk/dispatcher that from time to time she may have to work nights or weekends. Plaintiff's normal working hours were 8:00 a.m. to 5:00 p.m. and the position required the person to cover other employee's absences. Plaintiff was aware at the time she took the job that there had to be 24-hour coverage.

Plaintiff was approximately 56 years old when she was hired at BREC. Plaintiff worked

---

[1]The court's recitation of the facts is taken from Defendants' Statement of Uncontroverted Material Facts and Plaintiff's Response to Statement of Uncontroverted Material Facts in Support of Defendants' Motion for Summary Judgment. The court has noted any disputes as they are set forth in the briefs.

[2]Plaintiff does not dispute that she was responsible for covering weekends and "some occasional Sundays," but states that her shift was Tuesdays through Saturdays. Plaintiff further states that she was "not opposed to working Sundays occasionally but did not expect to work a succession of Sundays." Plaintiff's Response at ¶ 11.

with other dispatchers and/or night dispatchers, including Phyllis Miller, Karyn Brown, and Paula Ford. Ms. Miller was close to sixty, Ms. Brown was in her mid-forties, and Ms. Ford was close to fifty. Plaintiff admitted that her age of 56 at the time she was hired was not an impediment to her getting the job. Plaintiff remained employed at BREC for approximately four-and-a-half years.

Karyn Brown, who had been employed with BREC for a number of years at the time plaintiff was hired, was eventually transferred from a different area of the company to the dispatch area as a clerk/dispatcher. Plaintiff stated in her deposition that Ms. Brown was "an extremely good and hard worker." (Def's Ex. B, p. 81). Disagreements developed between plaintiff and Ms. Brown that led to plaintiff developing a disliking and hostile attitude towards Ms. Brown.[3] Plaintiff did not feel her disagreement with Ms. Brown had anything to do with age.

Ms. Brown filed a sexual harassment claim against plaintiff. Plaintiff denied Ms. Brown's allegations of sexual harassment. A meeting was held with plaintiff, Mr. Steska, and the union president, Mike Priest, regarding the claim of sexual harassment, at which plaintiff answered questions and explained herself. Mr. Steska stated during his deposition that BREC investigated the claim and looked at the length of employment of plaintiff and Ms. Brown, their reputation in the workplace as far as job performance, and the rating of the employee compared to the rating of the other employee's abilities.[4] BREC issued a Sexual Harassment Complaint Determination finding Ms. Brown's allegations to be true and warning plaintiff to not engage in any conduct to

---

[3]Plaintiff does not dispute that she disliked and had a hostile work attitude towards Ms. Brown, but states that it was only after Ms. Brown made an unfounded complaint against plaintiff to Mr. Steska.

[4]Plaintiff indicates that she disputes Mr. Steska's reasons for the determination.

harass Ms. Brown or any other employee, and stated that "failure to heed this warning will be justification for more severe discipline, including dismissal."

Plaintiff received another reprimand in November of 2006 for insubordination to Mr. Myers, as well as for continuing to harass Ms. Brown and deterioration of her work. Plaintiff denied the conduct that was the subject of the reprimand.

Plaintiff was required to work six Sundays in May and June 2006 after a position was vacated and before the position was filled. Plaintiff claims that the decision for her to work on the six Sundays was done in order to harass her because she attends church on Sunday, rather than because of her age.

Plaintiff received a Performance Review from her Supervisor, Mr. Myers, in August or September of 2006, in which it was noted that over the prior few months, the accuracy of plaintiff's work had declined and relationships between plaintiff and others within her department had eroded. Plaintiff refused to sign the Performance Review but did not file a union grievance with regard to the Performance Review. Plaintiff admitted that there was a deterioration of the atmosphere within the office, although she disputes that it was her fault.

Mr. Myers stated during his deposition that there was a learning curve with this job and plaintiff initially made normal errors, but then her work began to decline in 2004 or 2005. BREC, by its CEO, Mr. Steska, made inquiries of other employees in determining whether to terminate plaintiff. BREC received statements from Mr. Myers, Paula Ford, Dawn Wagner, Ms. Brown, and Phyllis Miller as to plaintiff's job conduct. Plaintiff was terminated on January 30, 2007. Plaintiff requested and received a letter from BREC stating the reasons for her termination, which included continuing to make mistakes and errors in her work and routine tasks, harassment of a

co-worker, insubordination to Mr. Myers, and unauthorized lunch breaks during work hours. The position of night dispatcher was filled by Heather Dietker on April 16, 2007. Ms. Dietker is under the age of forty.

Plaintiff filed her Complaint in this action on October 26, 2007. In her three-count Complaint, plaintiff alleges wrongful termination, violation of the ADEA, and willful violation of the ADEA.

## Discussion

In their Motion for Summary Judgment, defendants argue that plaintiff has failed to meet her burden that she was wrongfully terminated and/or that her termination violated the ADEA in that there is no evidence to establish that age was a factor in the decision to terminate plaintiff. Defendants further argue that they have set forth legitimate, non-discriminatory reasons for terminating plaintiff's employment. Defendants thus claim that they are entitled to judgment as a matter of law.

### A.      Summary Judgment Standard

A court may grant summary judgment when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law, according to Federal Rule of Civil Procedure 56 (c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S. Ct. 2512. In deciding a motion for summary judgment, the court must review the facts and all reasonable inferences in a light most favorable to the nonmoving party. See Canada v. Union Elec. Co., 135 F.3d 1211, 1212 (8th Cir. 1997).

In a motion for summary judgment, the movant bears the initial burden of proving the absence of any genuine issue of material fact that would preclude judgment for the movant. See City of Mt. Pleasant, Iowa v. Associated Elec. Co-op, Inc., 838 F.2d 268, 273 (8th Cir. 1988). Once the movant has met this burden, the non-movant may not rely on mere denials or bare allegations, but must point to specific facts that raise a triable issue. See Anderson, 477 U.S. at 249, 106 S. Ct. 2510-2511. The non-movant must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. See Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Supreme Court has found that "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Id. at 327, 106 S.Ct. 2555 (quoting Fed. R. Civ. P. 1).

**B.    Plaintiff's Claims of Discrimination**

In Count I, plaintiff alleges that she was wrongfully terminated in that defendants discriminated against her due to her age. In Count II, plaintiff claims that defendants violated the ADEA in that defendants treated her less favorably than younger employees and terminated her based on her age. In Count III, plaintiff alleges that she is entitled to "double" damages under the ADEA for the willful conduct of defendants.

The ADEA prohibits an employer from discriminating on the basis of age if that person is over forty years old. 29 U.S.C. § 631(a); Chambers v. Metropolitan Prop. & Cas. Ins. Co., 351 F.3d 848, 855 (8th Cir. 2003). A claim of unlawful discrimination may be established through direct or indirect evidence. Bearden v. International Paper Co., 529 F.3d 828, 831 (8th Cir.

2008). Plaintiff does not contend, and the record does not show, that she has any direct proof of adverse employment action on account of her age. As such, because any evidence of age discrimination would be indirect, the Court must apply the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Riley v. Lance, Inc., 518 F.3d 996, 1000 (8th Cir. 2008). Therefore, in order to survive defendants' Motion for Summary Judgment, plaintiff must first be able to establish a prima facie case of discrimination. Id. If she is able to do so, the burden then shifts to defendants to produce evidence that the adverse action occurred for a legitimate, nondiscriminatory reason. Id. If defendants come forward with such evidence, the presumption of discrimination raised by plaintiff's prima facie case would drop out of the case and plaintiff would need to show by a preponderance of the evidence that defendants' reason for adverse action was a pretext for discrimination. Id. At all times, plaintiff bears the ultimate burden of proving that she was unlawfully discriminated against. Rose-Maston v. NME Hosp., Inc., 133 F.3d 1104, 1107-08 (8th Cir. 1998).

1.      **Plaintiff's Prima Facie Case**

To make a prima facie case of age discrimination in the circumstances of this case, plaintiff must show that (1) she was at least forty years old, (2) she was otherwise qualified for the position that she had, (3) she suffered an adverse employment action, and (4) similarly-situated employees outside the class were treated more favorably. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); Thomas v. Corwin, 483 F.3d 516, 528 (8th Cir. 2007).

Defendants argue that plaintiff cannot provide any evidence that supports elements two

and four of her prima facie case. With regard to the second element, defendants contend that plaintiff failed to establish that she was performing her job at a level that met defendants' legitimate expectations. Defendants argue that the record reveals that there had been a steady decline in plaintiff's work and that plaintiff had harassed a co-worker.

The Eighth Circuit has held that, at step two of the prima facie case analysis, a plaintiff is only required to show that she was "otherwise qualified" for the position she held. Riley, 518 F.3d at 1000 (citing Reeves, 530 U.S. at 142, 120 S.Ct. 2097). Because plaintiff had been performing the night clerk/dispatcher position for over four years, she met that requirement of the prima facie case. Riley, 518 F.3d at 1000.

Defendants also argue that plaintiff is unable to establish the fourth element of her prima facie case: that similarly-situated employees outside the class were treated more favorably.

At the prima facie stage of evaluating a motion for summary judgment, the standard to be applied in determining whether employees are similarly situated is low. Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 852 (8th Cir. 2005). To meet this low threshold, however, plaintiff must nonetheless present evidence that she and members not within her protected class were involved in the same or similar conduct and were dealt with in different ways. Id. Plaintiff bears the burden of producing specific, tangible evidence showing a disparity in the treatment of similarly situated employees. Philip v. Ford Motor Co., 413 F.3d 766, 768 (8th Cir. 2005).

Plaintiff appears to allege three discriminatory acts: (1) plaintiff was required to work successive Sundays; (2) plaintiff was reprimanded for allegedly sexually harassing a co-worker; and (3) plaintiff was terminated.

Plaintiff first contends that she was required to work six successive Sundays while other

younger employees were not required to work Sundays. Plaintiff's claim lacks merit. Plaintiff was employed as a night clerk/dispatcher, which differed from the position of clerk/dispatcher in that a night dispatcher would be responsible for covering weekends, and a clerk dispatcher would not. Plaintiff, as a night clerk/dispatcher, received an additional wage over a clerk/dispatcher. Plaintiff admits that she understood when she took the job as night clerk/dispatcher that from time to time she may have to work nights or weekends. Plaintiff points to no other night clerk/dispatcher that was treated differently. Plaintiff simply claims that there were people hired to work the weekend shift but they were not called in to work. Plaintiff does not allege that these people were also night clerk/dispatchers and that they were available to work. To the extent that plaintiff is claiming that Ms. Brown should have been asked to work Sundays, this claim fails as Ms. Brown was not a night clerk/dispatcher and was thus not similarly situated. Plaintiff has failed to present evidence that other similarly situated employees were treated differently.

Plaintiff next argues that she was reprimanded for allegedly sexually harassing co-worker Karyn Brown, while Ms. Brown was not disciplined for similar conduct. Plaintiff alleges that Ms. Brown engaged in multiple acts of sexual harassment including "inappropriate behavior with the men employees at BREC," and showing a provocative picture on her computer to other employees. Plaintiff accurately notes that the fact that Ms. Brown was over forty and in the protected class does not preclude plaintiff from making a prima facie case of age discrimination based on preferential treatment of Ms. Brown over plaintiff. See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 312, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996). Plaintiff, however, does not claim that she ever filed a sexual harassment complaint against Ms. Brown for any of this alleged behavior. Ms. Brown filed a sexual harassment complaint against plaintiff.

BREC investigated the claim and looked at the length of employment of plaintiff and Ms. Brown, their reputation in the workplace as far as job performance, and the rating of the employee compared to the rating of the other employee's abilities. BREC then issued a Sexual Harassment Complaint Determination finding Ms. Brown's allegations to be true. Because a sexual harassment complaint was never filed against Ms. Brown, plaintiff has failed to demonstrate that Ms. Brown was similarly situated and treated differently.

Plaintiff finally contends that she was terminated and replaced with a younger employee under the age of forty. Plaintiff's position was filled by Heather Dietker. Defendants do not dispute that Ms. Dietker is under the age of forty. As such, plaintiff puts forth a prima facie case of discriminatory discharge under the ADEA because she is at least forty years of age, was terminated, was otherwise qualified, and was replaced by a younger employee. See Thomas, 483 F.3d at 429. Thus, the burden shifts to defendants to articulate a legitimate, non-discriminatory reason for plaintiff's termination.

## 2.    Defendants' Legitimate, Non-Discriminatory Reasons

Defendants have set forth legitimate non-discriminatory reasons for plaintiff's termination. Defendants contend that plaintiff was terminated because her work performance had declined; she developed an antagonistic attitude; she was insubordinate to her supervisor, Defendant Myers; and she continued to harass Ms. Brown.

Defendants argue that plaintiff's work performance steadily declined. Mr. Myers stated during his deposition that there was a learning curve with this job and plaintiff initially made normal errors, but then her work began to decline in 2004 or 2005. Defendants claim that plaintiff took down wrong locations, disconnected wrong locations, billed people incorrectly,

failed to take down necessary information, connected or disconnected with wrong readings, and failed to answer the phones or help customers. Plaintiff contends that her work had not deteriorated and that she received satisfactory job performance reviews. Plaintiff denies making errors or mistakes and claims that the alleged errors were not brought to her attention.

On plaintiff's first review, a "Business Internship Evaluation" dated July 15, 2002, it was noted that plaintiff made an acceptable number of errors, lacked some required knowledge that was expected to come with experience, and was highly enthusiastic. (Pl's Ex. 11). Plaintiff received a performance review on October 10, 2002. Plaintiff's job skills were evaluated on a scale of one to five, with one being "unsatisfactory," three being "normal and expected," and five being "exceptional." Plaintiff received all twos and threes. Mr. Myers commended plaintiff on her positive work attitude and work ethic, although he noted that plaintiff should stay focused on phone calls. Mr. Myers recommended further training. Plaintiff received a performance review on October 6, 2003, in which she received twos, threes, and fours. Mr. Myers again commended plaintiff on her work ethic and noted that plaintiff "needs to be more attentive to details and customer needs." On September 10, 2004, plaintiff received a performance review in which she received mostly twos and threes, with some fours. Plaintiff's overall performance was rated as a two. Mr. Myers stated that plaintiff's job performance had "not improved proportionably with her increased experience." Mr. Myers advised plaintiff to increase her focus and concentration to minimize errors. Mr. Myers recommended that plaintiff participate in further training. In November 2005, plaintiff received a performance review in which she again received mostly twos and threes, with some fours. Mr. Myers noted that plaintiff's attitude and work ethic compensated for her lack of technical knowledge and experience, although it was very important

that plaintiff strive for improvement. On her final August 2006 performance review, plaintiff received mostly twos and threes, with the exception of a one with regard to the accuracy and timeliness of her work and a four with regard to her ability to take action without direction. Mr. Myers stated that the accuracy of plaintiff's work had steadily declined over the past few months. He noted that plaintiff seemed to have lost focus and concentration, which had negatively impacted the quality of her daily assignments. Mr. Myers further stated that relationships between plaintiff and others in the department had eroded over the past few months to an "upsetting level." Mr. Myers stated that plaintiff displayed a lackadaisical attitude, which detracted from her previous strength of an exemplary job approach and work ethic. Mr. Myers recommended additional training.

As previously discussed, BREC issued a Sexual Harassment Complaint Determination on September 1, 2006, finding Ms. Brown's allegations to be true and warning plaintiff to not engage in any conduct to harass Ms. Brown or any other employee, and stated that "failure to heed this warning will be justification for more severe discipline, including dismissal." (Def's Ex. B). Plaintiff received another reprimand in November of 2006 for insubordination to Mr. Myers, as well as for continuing to harass Ms. Brown and deterioration of her work. Plaintiff denied the conduct that was the subject of the reprimand.

BREC's CEO, Mr. Stesko, then made inquiries of other employees in determining whether to terminate plaintiff. BREC received statements from Mr. Myers, Paula Ford, Dawn Wagner, Ms. Brown, and Phyllis Miller as to plaintiff's job conduct. Mr. Myers stated that plaintiff continued to make mistakes that affect the cooperative, had an antagonistic attitude, and had been "rude, volatile, and insubordinate" to him. (Def's Ex. I). Ms. Ford stated that plaintiff made a lot

of mistakes, had a bad attitude, especially toward Ms. Brown, and was taking a "double" lunch period. Ms. Wagner stated that plaintiff continued to make mistakes that she had to correct, that she had witnessed plaintiff's insubordination to her supervisor, that plaintiff created tension in the workplace and that plaintiff would slam the phone and her paperwork. Ms. Brown stated that plaintiff continued to harass her, neglected to take phone calls, made multiple mistakes, and was "bad-mannered" with customers. Finally, Ms. Miller stated that plaintiff was difficult to work with and that her communication style was "very unprofessional," and that she did not communicate important outage information.

The undersigned finds that defendants have provided sufficient legitimate non-discriminatory reasons for plaintiff's termination. Plaintiff's performance reviews and the statements of her co-workers support defendants' finding that plaintiff continued to make errors and developed an antagonistic attitude. Although plaintiff denies that she made errors and claims that the alleged errors were not brought to her attention, each of her performance reviews noted the errors. Further, despite plaintiff's characterization of her performance reviews as "satisfactory," plaintiff consistently received many "two" ratings, which are indicative of below the "normal and expected" level. The deterioration in plaintiff's work performance and attitude along with plaintiff's discipline for harassing Ms. Brown and being insubordinate to Mr. Myers provide legitimate non-discriminatory reasons for plaintiff's termination.

## 3.    Pretext

Because defendants met their burden of production, the presumption of unlawful discrimination disappears, and the burden shifts to plaintiff to demonstrate defendants' articulated reasons for termination were a pretext for intentional age discrimination. See Thomas, 483 F.3d

at 529. Plaintiff "can avoid summary judgment only if the evidence considered in its entirety (1) created a fact issue as to whether [defendants'] proffered reasons are pretextual *and* (2) created a reasonable inference that age was a determinative factor in the adverse employment decision." Haas, 409 F.3d at 1035 (emphasis in original). In this case, plaintiff produces no evidence, other than her replacement by a younger woman, indicating that defendants' articulated reasons for terminating her were a pretext for age discrimination.

Plaintiff's only argument that could be construed as an attempt to show pretext is her claim that defendants showed special preference to Ms. Brown, who is younger. Plaintiff has provided her own affidavit along with the statements of four employees, in which the alleged preferential treatment of Ms. Brown over plaintiff is discussed. These statements discuss plaintiff's good character and work ethic, Ms. Brown's alleged inappropriate sexual remarks, and the unfair treatment of plaintiff by Ms. Brown and BREC management. In none of the statements, however, is it alleged that Ms. Brown was given preferential treatment over plaintiff due to her age. Further, although these statements allude to inappropriate sexual remarks allegedly made by Ms. Brown, the record does not indicate that plaintiff or any other employee ever filed a sexual harassment complaint against Ms. Brown.

Plaintiff contends that defendants sided with Ms. Brown in her sexual harassment complaint against plaintiff without fully investigating the matter. Ms. Brown claimed that the alleged sexual harassment occurred outside the presence of any other employees. (Sexual Harassment Complaint Determination, Def's Ex. B). As such, BREC adequately investigated the claim by interviewing plaintiff and Ms. Brown. (Id.). Plaintiff acknowledges that a meeting was held with plaintiff, Mr. Steska, and the union president, Mike Priest, regarding the claim of sexual

harassment, at which plaintiff answered questions and explained herself. BREC looked at the length of employment of plaintiff and Ms. Brown, their reputation in the workplace as far as job performance, and the rating of the employee compared to the rating of the other employee's abilities, and found Ms. Brown's allegations to be true. Although plaintiff disputes BREC's reasons for its determination, it is undisputed that Ms. Brown was employed with BREC longer than plaintiff. Plaintiff also does not contend that Ms. Brown had a record of poor job performance. In fact, plaintiff acknowledged in her deposition that Ms. Brown was "an extremely good and hard worker." (Deposition of Shirley Brown, Def's Ex. B, p. 81). Plaintiff has presented no evidence that age was a factor in BREC's finding that plaintiff sexually harassed Ms. Brown.

As previously discussed, BREC terminated plaintiff due to her deteriorating work performance, antagonistic attitude, and harassment of Ms. Brown. When asked during her deposition what changed from the time she was hired, at the age of fifty-six, that caused defendants to want to get rid of her due to her age plaintiff responded: "I think Karyn happened." (Deposition of Shirley Barnes, Def's Ex. B, p. 63). Clearly, there was conflict and hostility between plaintiff and Ms. Brown. Plaintiff, however, denied that her disagreements with Ms. Brown had anything to do with age. (Deposition of Shirley Barnes, Def's Ex. B, p. 45).

To survive summary judgment, a plaintiff must set forth affirmative evidence and specific facts which show that there is a genuine dispute on the issue. See City of Mt. Pleasant, 838 F.2d at 273-74. Here, plaintiff makes no such showing on the issue of pretext. The court finds that the evidence is insufficient for a reasonable trier of fact to infer that age was a determinative factor in plaintiff's termination. Similarly, plaintiff is unable to demonstrate that she was wrongfully

terminated due to her age. Thus, plaintiff has failed to rebut defendants' legitimate, non-discriminatory reasons for her termination. Accordingly, summary judgment will be entered in favor of defendants.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' Motion for Summary Judgment (Doc. No. 18) be and it is **granted**. A separate order of Summary Judgment will be entered on this date.

Dated this ___7th___ day of July, 2009.

LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE